Your Honor, this case on the docket, 2-17-0659, N.B. Financial Bank of North America, has successor and interest to Broadway Bank, defense attorney at the lead. The Chicago Title Land Trust Company has successor to the South Bank National Association, at the house, defendant in defense. Partner in law, the actual defendant in defense, Mr. Rod Virginia. Thank you. Mr. Rodjanovich, how do you pronounce your name? It's Rodjanovich, but it's become Rodjanovich over the years. Okay. Good morning to the court. Good morning. My name is Rod Rodjanovich. I have, for the last eight years, represented Defendant Joyce Sweene in this, for the last eight years, in this foreclosure action. Ms. Sweene is the owner of a home in Riverwoods, Illinois. The home is titled in the land trust, and she was the sole beneficiary of this home. N.B. Financial filed a foreclosure action to foreclose on two mortgages that were taken out on this home. Throughout the litigation, in her answer and her affirmative defenses, Ms. Sweene asserted that letters of direction bearing her name from Broadway, from Chicago Title to Broadway Bank were forged, and she maintained throughout the litigation she never signed these letters of direction. She never saw these letters of direction. She didn't know anything about this transaction. As a matter of fact, there was a hearing for partial summary judgment in July 2015. There, the evidence that was presented by the court was two depositions, the deposition of Joyce Sweene and the deposition of Gloria Skouros. Gloria Skouros was the former officer of Broadway Bank. She had been the point person on this transaction. And so there was just these two depositions and the affidavit. You never had a graphologist testify, did you? There was never a graphologist. There was never any handwriting analysis done at all. Just the affirmative defenses, I did not sign this. Our position was that someone, whether it was the assistance of or the negligence of Broadway Bank, allowed these. I think we are probably most interested in why you believe the bank could not rely on the signature of the trustee or your client. In the briefing, MB Financial cites in re marriage of gross, and in re marriage of gross the court said that the only representation that a trustee makes is that they are authorized, or their signature, they are authorized to do what they're doing. And MB Bank's position is that they're entitled to rely on that. We disagree. The threshold issue here has always been, did she sign this? But if she did not sign it, MB Financial's position is it doesn't matter if she didn't sign it, we're entitled to rely on these letters of direction. We've cited the Christian versus Feinberg case for the position that letters, forged letters of direction convey no right, convey no title to anything. And that's been our position throughout. MB Financial has cited the Grote case, Grote versus, I think it was the city of, the first bank of Schomburg. And there the court stated in dicta, I believe it was dicta, that the Christian case should be narrowly read, that if the bank is a bona fide mortgagee and has no knowledge of any impropriety or anything that's wrong with the letter of direction, they can rely on that. But in this case, summary judgment, we've argued, we've argued, we've always argued that the bank was aware or must have had knowledge or should have had knowledge that Joyce Sweene did not sign these letters of direction. And at summary judgment and depositions, the deposition of Gloria Skorowicz was taken. And she was all over the place in her deposition. She stated that, yes, I witnessed Joyce Sweene sign these letters of direction. She came to Broadway Bank nine or ten times. Later in her deposition, she said, well, maybe I, maybe she didn't come, maybe I gave it to Ron Rooting and Terry Sweene, who are other defendants here. Terry Sweene is Joyce Sweene's daughter. Didn't she say they never do things like that? Well, she said the procedure, the procedure of Broadway Bank was, at least she says, the procedure, and her procedure was always that the person would have to come into the bank and sign in front of a bank officer. And when she was pressed on that, when she was pressed on that, she said, well, maybe, maybe that didn't happen. At summary judgment, so that's what she said in her deposition. Joyce Sweene testified she's only been to that bank three times, 1999 and two other times before 2005. It was all to do with her first, with the original purchase of the home. She stated she never signed any of these documents. She stated she didn't know anything about this transaction until a box showed up in front of her door with the lawsuit. She also had an affidavit which tracked her deposition and said she didn't sign these documents, knew nothing about this transaction. Now, the court, in granting partial summary judgment on this issue of forgery, the word forgery has been used a lot in the case or whatever, but her position is she didn't sign these letters of direction. They were forged, although that signature of Chicago Title has never been a dispute on the mortgages. At summary judgment, the court, our position is, made an improper credibility determination. Let's get to that. The court didn't weigh the credibility here. Yes. Is that proper? It's not proper. In the Schulenberg v. Rexhorn case, the, quote, the credibility of a witness is a question for the prior fact to resolve, not a matter to be decided on a motion for summary judgment. And here the trial court specifically said, quote, I think, in fact, that while she may have changed, regarding the deposition of Gloria Skouros, I think that, in fact, while she may have changed her testimony a couple of times, it's people catching themselves saying, you know, what, this is really what happened. Now I remember. Or being frankly honest about what went on. Court, in our opinion, this is an improper credibility determination. The court says nothing about the deposition testimony of Joyce Sween. The court says nothing about the affidavit. Both parties have attached these depositions to their, to the motion for summary judgment and to the response. So both parties, MB Financial attached Joyce Sween's deposition to the motion for summary judgment. Court makes no mention of Joyce Sween's testimony and relies solely, apparently to us, relies solely on a credibility determination that, you know, she's probably being honest. You know, memory's a tricky thing. These things happened a long time ago. And our position is that that is improper. But didn't the court say at one point something to the effect that I'll assume that your client is truthful and, in fact, she didn't sign it and it's a forgery? The court asked, the court also asked, is there a, I'm trying to remember whether Judge Barones or the trial court asked that. And our position is she never signed it. The court did ask is there something, is there a case law out there, outside of forgery, negligence, that would put liability on MB? And we cited the Mellencroft case, M&T versus Mellencroft. And in M&T versus Mellencroft, where one of two innocent persons must suffer by reason of fraud or wrong conduct of another, the burden must fall upon him who put it in the power of the wrongdoer to commit the fraud or wrong. Our position was here, even if Broadway Bank was not aware of, did not participate in the forgery, if they didn't follow their procedure, if they gave these letters of direction to Ron Rooting or Terry Sweene to bring to Joyce Sweene to sign, they didn't know, her position was, well, we would never do that because we could never be sure that Joyce Sweene signed these letters of direction. That's why we bring, we would require her to be here. But she didn't rule out, Ms. Skouras, in her deposition, does not rule out that that might have happened. She says, I don't know. She was asked yes or no. Did you give these? She was asked yes or no. And she could not answer yes or no as to whether she gave these loan documents that required Joyce Sweene's signature, these letters of direction. These letters of direction all bore Gloria Skouras' signature. Each of the letters of direction, they were prepared by Broadway Bank. They originated from Broadway Bank. How they got to Joyce Sweene has been the threshold issue in this case, or if they got to Joyce Sweene. And I believe that the trial court erred when it decided this threshold issue. Is it your contention that if the document was forged, then it would be impossible for your client to have appeared in front of a bank officer who witnessed her signature on the document? I'm not understanding the question. If it's forged, and it's supposed to be done in front of a bank officer, signed in front of a bank officer, then is it possible to sign in front of a bank officer and not have a forgery? Well, Joyce Sweene never went to Broadway Bank, never signed in front of an officer of Broadway Bank. If she claims she didn't sign it, then it means that she never signed it either in China or Cuba or the United States. And therefore, she probably didn't sign it in front of the officer. She did not sign it in front of the officer. So if she says she didn't sign it, and she couldn't have signed it in front of the officer because she didn't sign it, then wouldn't the officer be incorrect when the officer said, she signed it in front of me? Incorrect or not telling the truth? Both, either one. It doesn't make too much difference, does it? If, in fact, the law is that the person who's supposed to be at a disadvantage is the one who allowed the forgery to take place. Correct, correct, correct. And in this case, we've always held the position that this uncertainty, this uncertain testimony of Gloria Skouros was, whether it was a failure to follow procedure or negligence. I mean, at the time, Ms. Skouros and Broadway Bank were defendants in a $140 million federal lawsuit, and the basis for that lawsuit was nonexistent underwriting and gross negligence. Would you say there's a material issue of fact as to whether or not your client signed a document in front of a bank officer that supposedly is being used to obtain a deficiency judgment against her? There is a material issue of fact, yes. And is that because there are two diametrically opposed factual scenarios given in two different depositions from two different parties? That is correct. In addition, there is the affidavit, unrebutted affidavit of Joyce Sween, which was attached to the response to the motion for summary judgment. That is her position. Now, the issue came up in briefing here that when this matter went to trial, the trial court had ruled on this forgery issue, and it stated that the only issue in the trial would be lack of consideration, the lack of consideration argument. When this matter went to trial, the only two witnesses at trial were MB manager of acquisitions, Dustin Ackman, testified for the bank, and the only other witness was Joyce Sween. Mr. Ackman had no personal knowledge to testify to the records. He had no explanation for why six letters of direction directing Broadway Bank to pay the proceeds of all these transactions to Joyce Sween never happened. There was no explanation as to why each of these letters, paid proceeds letters sent from Chicago Title to Broadway Bank saying, pay these proceeds to Joyce Sween. No explanation at trial. There was testimony at trial. Joyce Sween was examined by MB's counsel, and she testified, I didn't know anything about this. I didn't sign any of this. And she was an adverse witness there. That was her testimony. That was unrebutted testimony at trial that she had. Why should there have been a deficiency judgment entered against your client? There should not have been a deficiency judgment entered against her. Count six was an action on the note. Count six was an action on the note of Joyce Sween. It was many change in terms agreements, and she denied that she had ever signed the change in terms agreement that count six was based on. That was not, that count was not tried. There should be no deficiency judgment against Joyce Sween. She didn't sign these documents. She didn't participate in this transaction. And count six, which we cited in the brief, never went to trial. In fact, at the summary judgment hearing in the briefings, MB Financial said that they would not be proceeding on this count six. They had dropped count five, which was an action on the note against Chicago Title, and they informed the court that they would not be proceeding. So there was no testimony as to count six. She should not be liable for any deficiency in this matter. Should we hold the bank to their representation that they did not intend to pursue a judgment, a money judgment? No. Both parties proceeded to trial. That issue never came up. It was in a footnote in the motion for summary judgment, and it stated that a motion would be, that a motion has been filed, reflecting that MB Financial would not, is not proceeding, the words were is not proceeding, on count six. And yet after the trial, after the trial court's opinion, there were some multiple orders that came, and those orders reflected that there had been a finding on count six that was not in the post-trial memorandum, and it was just in this one-page order. And we raise that as a point of error. If your time's up, you'll have a chance to make the vote. Thank you. Mr. Seratolla. Good morning, Your Honors. May it please the Court. My name's Bill Seratolla. I will be arguing on behalf of the bank this morning. Your Honor, Your Honors, as you know, this whole case is predicated on the defense that Dr. Sween's signatures on the letters of direction were forged. The trial court, when we had a trial on consideration, decided to allow evidence on that issue. But it was really under a different theory, that she was a stranger to the transaction. That's what we were, that was the issue to be tried. But before we actually began testimony, the court said, I'm going to let this forgery issue come in and see how it plays out. So after the court heard Dr. Sween's testimony on the forgery issue and looked at the signatures on all of the various loan documents, the court held, after hearing evidence, that there was no forgery, that the signatures of Dr. Sween were, in fact, authentic. So I think that... Is it really appropriate for the court to make a finding and to say, if I were to look at those two signatures, I would say it's her signature? If you look at that signature compared to the other ones, you know, as a layperson, I can't say that they're not the same person signing it. I mean, is that finding appropriate? Well, I would say yes, Your Honor. He's an expert in handwriting analysis. I understand your point, Your Honor. But it's the defendant's obligation to come forward with some evidence that there is a forgery. The only evidence that they presented was her testimony and the documents that had her signatures on them. So that is all he had to consider when determining whether or not, in his mind, there was a forgery. And he determined that there was not. Now, Dr. Sween's counsel argues, well, her testimony was unrebutted and therefore the court was obligated to accept it. Well, we know that's not right. I mean, if a witness testifies that the weather in Chicago was great in the wintertime, the court doesn't have to accept that. The court, you know, evaluates testimony and triers a fact. But that's an opinion. She testified to a fact. I did not sign that. That wasn't her opinion. I understand, Your Honor. But he determined that she was not telling the truth, that she, in fact, did sign these documents. And I think it's in the province of the trial court to evaluate testimony and determine whether witnesses are being truthful. So, in my view, because the court has already found that, from a factual standpoint, after trial, after Dr. Sween had the opportunity to present any evidence that she wanted, including experts which she did not bring into court, that there was no forgery. And so, therefore, all the issues that we're going to talk about from here forward are sort of irrelevant because if there is no forgery, there's nothing really for the court else. There's nothing else for the court to determine. What about the deficiency judgment? Well, my argument on deficiency judgment is this. You know, we presented our motion for order approving settlement that had deficiency judgments in there against all of the borrowers, including Dr. Sween. We included in that motion a copy of the proposed order that was to be presented to court. The defendant did not file a written response challenging the proposed order or the motion, did not show up in court to argue against it, did not file a motion to reconsider after the order was entered. The defendant basically did nothing with regard to the entry of that order until she came here. And so I would argue that the issue has been waived. I mean, she didn't contest it at all at the trial level. If I understand your argument correctly, you are not contesting that the partial summary judgment was based upon credibility findings, but you believe that the fact that there was a trial regarding whether or not she was a stranger resolved the summary judgment by a way of a hearing on the merits where evidence was presented. That's not exactly true, Your Honor. Okay. Well, tell me what is true. Sure. I mean, certainly my argument is that because there was a finding of no forgery, the issue of whether the summary judgment was proper is irrelevant. But the summary judgment entry was proper as well because there was no credibility weighing involved. I think counsel sort of laid out the law correctly that a bank is entitled to rely on a land trustee's signature on a mortgage so long as the bank was not involved in the forgery or had actual knowledge of that forgery. Because the mortgage contract is between the land trustee and the bank. So as long as we were not involved in the forgery or had actual knowledge of it, then the mortgage is valid. When you say we, you mean? The bank. M&B. M&B. Because you supposedly are a BFP? Yes. And it was Broadway Bank at the time, but we're the successor interest. You're so right. As long as Broadway Bank had no, we're a bonafide purchaser, unquote, as long as we had no actual knowledge of the forgery and or were not involved in the forgery. And when you say we, you mean M&B Bank, not Broadway Bank? No. I mean, we take, we're a successor interest. You take subject to Broadway's defalcations or negligence? Well, I don't believe there was any, but had there been, we would. I said you take subject to them if they exist. Yes, that's correct, Your Honor. So the question is, based on the testimony that was presented at summary judgment, was there any evidence at all presented by the defendant that Broadway Bank had any knowledge of the forgery or was any way involved in it? And the answer to that question is no. If you look at the testimony of Ms. Severus, she said, I'm almost certain that the woman signed the documents in front of me. That's my practice. Do I have specific recollection of what happened nine or seven or eight years ago? No. But this is my practice. This is what I remember. Dr. Sween testified, I don't have any idea what happened. Did her signature appear alongside the defendant's signature? On the letters of direction, yes, it did. So you take those two sets of testimony. One, this is my practice. This is what I remember, although not with any specificity. And then you have Dr. Sween's testimony, but I don't remember anything. When you have those two sets of circumstances, there's nothing to weigh. There was no evidence presented to the court that Broadway Bank had any knowledge of anything. So when the defendant does not come forward with evidence of knowledge or involvement. Well, if she signed that document, then either she's lying or the defendant's lying. Would that be a reasonable conclusion? Isn't her signature supposed to at least imply that it's a certification that the defendant signed in her presence? I'm not sure about that, Your Honor. In fact, I don't think so. Well, tell me what it is if it isn't a certification. It's an acknowledgment that the beneficiary of the land trust is directing the land trust to do something and the bank is consenting to that as the mortgagee. Is there a requirement that those signatures happen simultaneously? I don't believe so, Your Honor. Now, I think that was Ms. Segura's testimony that that was her practice to have it happen that way. But I don't believe it's a requirement that Dr. Sween sign that document in Ms. Segura's presence. I'm certain of that. So it is possible that Dr. Sween signed it at some other time than that Ms. Segura signed it. So I think that's the way I see it. Now, she did testify that that's her practice to have it signed in front of her, but that's not a requirement. So my point is that since there's no evidence that the defendant presented that Broadway Bank knew anything, summary judgment was proper. Well, was there any evidence that indicated that Broadway Bank did some strange things? Well, that's their theory, right? I don't mean their theory. I mean strange things like having someone supposedly fax a signature of a check that was supposed to have been endorsed before it was negotiable. There was an unusual circumstance for sure. Shouldn't we view all of these circumstances as it weighs with respect to what Ms. Segura would have us believe? I don't believe that's appropriate here, Your Honor, because the question is, did they present any evidence that we knew of a forgery? The fact that this loan documentation was not perfect, and that there were a few unusual things that may have happened in this transaction, that does not give rise to the defendant getting her property free and clear of a mortgage that we've loaned money on. When does it raise a question of fact? When is it sufficient, let's put it that way, to raise a question of fact? It raises a question of fact if the defendant can show that there was something that would suggest that we knew that this woman did not sign the document. I mean, I'm struggling to think of examples, but I suppose if the signature was wildly different than what the loan officer was used to seeing. Well, doesn't that presuppose that Ms. Segura was familiar with the signature? I'm just trying to think of examples of what could create a question of fact here. Okay, I'm sorry. I shouldn't cut you off. I suppose perhaps if the documents were delivered to her in a very unusual fashion. I suppose if she would have called up the bank and said, Hey, what's going on here? I don't know. And I think that's a critical fact here. Remember, when a land trustee does something, they send you a bill for it. And this came out in Dr. Schleen's testimony. So, when the land trustee, who's really the most responsible party here, if there is a forgery, if the land, when the land trustee signed the mortgage in 2006, the very first time, they sent her a bill for it. That's how land trusts work. And when she got the bill for signing a mortgage that she claimed she knew absolutely nothing about, it would be logical for her to pick up the phone and call the land trustee and say, What's going on here? I didn't direct anyone to sign a mortgage on my behalf. She never did that. And, in fact, it came every time the land trustee signed a document. She got bill after bill after bill. Well, the first one, though, directed that if there was money to be taken against this house, that it was to go to her. That's what the letter of direction said. Right, but that was not followed. That was not followed. So, if she got a bill saying that the money is going to you, why would that raise a specter to make her call and say, Well, this isn't right. I didn't agree for that money to go somewhere else. Well, that would, if she, I mean, first of all, the bill probably didn't say that, and it's in the record. Right, that's my point. But she got a bill for the land trustee signing a mortgage in 2006. She claims she didn't authorize anybody to sign a mortgage on her behalf in 2006. If the bill said, and you're supposed to get the money, that would be even more of a reason for her to pick up the phone. But she should have inquired anyway because she didn't, she claims, authorize the land trustee to sign anything in 2006. And she got bill after bill after bill every time they signed a mortgage extension, every time they signed a change in terms agreement. And she said in her deposition, Well, I just thought this was for some other loan I had, so I didn't pay any attention to it. Well, I mean, I think that's very powerful evidence that she knew what was happening here or should have known. Again, if we're, on the defendant's theory, and I'm not sure how this actually plays out, that who is in the best position to prevent this if there was a forgery? Well, she was in the best position because she could have picked up the phone the first time this happened right when it happened, and she didn't. And I also point, I would like to analogize to a concept of negotiable instruments. We all know from forgeries that after the forgery goes through the chain of banking, the person liable for the forgery, it always comes back to the party that accepted the forged document. And in this case, that was the land trustee. We don't know, we have no way of going behind the interactions between the land trustee and the beneficiary of the land trust. That's between them. I wouldn't, I mean, but isn't this an unusual circumstance when basically Chicago Title and Trust is relying on your bank officer saying, she signed this in front of me? I don't believe that's the case, Your Honor. I mean, yes, our signature is on the document. Then what's the point of your signature? Why would you even engage in that kind of, you called it an acknowledgment, someone else calls it a certification, somebody else calls it something just short of a notary. Can't the party, it's like a three-way circle here. Your officer says she signed this. Chicago Title and Trust relies on that because the money is going to the person who says she signed it. Respectfully, Your Honor. Isn't that making this a little bit unusual? Respectfully, Your Honor, I don't believe that's what the document says. It doesn't, it's not a certification from the bank officer. It just says acknowledged. I agree. You can dance around it. Nonetheless, your agent signs that, and it's not just because there's another blank line here. It has some import, correct? I think the import, respectfully, is that we acknowledge that this is all part of the transaction. I disagree with you respectfully that it is a certification, a verification, that the signature is accurate. I don't believe that's what a bank does in the land trust situation, and I don't believe that's what happened here. Why would Seguros say that's her procedure, that she always requires it? Well, I do think that bank officers, in an abundance of caution, do like to have all loan documents signed in front of them. Wouldn't it be possibly because if the loan document was signed in front of them and they knew the person, then the probability that it was a forgery was nil, whereas if the document wasn't signed in front of them, they wouldn't know unless someone like Ms. Sweeney appeared in front of them, handed them the document, and said, I signed this outside your presence, but this is my signature. The answer to your question, Your Honor, is yes. That is the best practice to prevent a forgery. I can tell you that in today's world of electronic communication, the days where loans close and everybody sits in a conference room and people sign things, that rarely happens anymore. So the answer to your question is yes, what you just described would prevent a forgery from ever happening, but I don't believe it's required to go through that way. Well, has the law changed? Well, the law certainly hasn't changed. Then if the law hasn't changed, what difference does it make? Just because it's become pandemic or ubiquitous or highly practical to cut corners, that the person who's responsible has now changed to the person who is supposedly the one who executes the document instead of the one who accepts it? Respectfully, Your Honor, the law was never that. For a loan document to be valid, it has to be signed in front of the law alone. So that's not the law. Well, is a document to be valid, it has to be actually signed by the party to be charged? Yes, of course. And if it's not, then I think it's called a forgery? Yes. Okay. But I don't think that, again, there's no requirement that a bank officer would be able to see it. No, there is no requirement, but the point is that I just applied for a trusted traveler program and I had to appear in front of Homeland Security. And the reason why I did wasn't because of some brooding omnipresence in the sky or some statutory legislation. It was because it was the most practical thing to do. I understand, Your Honor. And it worked. I actually appeared and they saw me and they saw my passport. I mean, it was so copacetic it was phenomenal. I understand. Okay. I'd just like to close, if I may, for 30 seconds to just remind the Court that our view is that it is irrelevant if this document, the letters of direction, are forged because we weren't a part of it, we didn't know about it, and we're entitled to rely on the land trustee's signature on the mortgage. Thank you very much for your time, Your Honor. Thank you. I'll try to be brief here. I want to call the Court's attention that each of these letters of direction stated that the proceeds should be paid to Joyce Sweene. These letters of direction were a red flag because all these other documents in these transactions, the money, the proceeds, was going to Terry Sweene and Ryan Moody. Now, Gloria Escura signed each of these letters of direction. She must have read what the letter of direction said. There it said that the proceeds of this loan would be going to Joyce Sweene. If that wasn't supposed to happen, that should have been a red flag right there, like, what's going on here? I mean, why does it say that Joyce Sweene is getting the proceeds, but this loan is going to Ron and Terry for $1,025,000 and then the later? So that was a red flag, and I cite in my brief, LaSalle Bank v. Farone, 2008, where the Court, some similar facts involve a land trust, a lawyer, and a beneficiary, but the Court said that once a lender has notice of facts that would put a prudent man on inquiry, it is chargeable with knowledge of other facts which it might have discovered by diligent inquiry. So our position is Joyce Sweene never signed it. She's never there. But just looking on the face of these letters of direction, there's a red flag there. What's going on here? Why is this letter of direction directing the proceeds to go to Joyce Sweene, but she has nothing to do with this? The rest of this whole transaction is involving Ron Rudy and Terry Sweene. The Court said in its act of trial, it says here, however, her testimony, Joyce Sweene at trial, is not credible as she also testified that the signature did not look like her signature and she wrote several checks to Broadway Bank to make payments on the loans on behalf of Terry Sweene and Rudy. When the entire transaction is examined, it is clear that the first and second mortgage were executed on the Riverwoods property at the direction of Joyce Sweene. Well, I don't think it's clear. I don't think anything about this transaction was clear. And I think that Broadway Bank was a gatekeeper. They saw these letters of direction. They were signed by Gloria Skouros and the fact that they were, and there was no explanation at trial. Dustin Ackman testified here. No reason why the bank, Broadway Bank, ignored the paid proceeds letters. Paid proceeds letters that it signed off on in the letters of direction signed by Gloria Skouros. The last point I want to bring up is Joyce Sweene's testimony at trial. It was unrebutted. It was factual testimony. I didn't know anything about this transaction. I did not sign these documents. What's your response to Mr. Saratella's statement that your client should have picked up on the fact that she was getting billed by the trustee for doing things? I don't know if it's in the deposition, but we all get mailed, we all pay bills, we don't look. Maybe we all should be more careful at what we pay that comes through the mail. But I think the party better in position to stop this fraud, and in our position it's fraud here, is the bank from the very beginning. And they did not do their job. And I think under M&T, Malincroft, the burden, the loss, whatever should fall on and be financial. You didn't ask for a grant of summary judgment. You asked for a remand for trial, didn't you? I don't know if I also asked for, I don't know. He asked for reversal of everything. We asked for reversal, but I think it's in the power of the court to But the point is, is that there's a material issue of fact. There is a material issue of fact. I don't know how we could grant you summary judgment. And I don't know how anything could happen other than go back for a new trial, or at least the completion of the proceedings. Correct. I think that, I cite the Bucktown-Johnson case in Peeble v. Brown v. Baker, where the cases say that, I apologize here, the fact finder may not discount witness testimony unless it was impeached, contradicted by positive testimony, or found to be inherently improbable. And none of those factors were met at trial. Joe Sweeney's testimony was unrebutted. I don't know if this court has the power to just say that there was, that that was just error. That testimony was unrebutted. There was no positive testimony to contradict it. And it's not inherently improbable. I didn't sign this. I wasn't there. But, yes, we believe there's a genuine issue of material fact. Okay, thank you. We'll take your case under advisement. There are other cases on the call. There will be a short recess.